**SIGNED THIS: October 12, 2012**

_____
**Mary P. Gorman
United States Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | Case No. 11-72934 |
| SHAD L. ESKEW and ) | |
| JAMIE L. ESKEW, ) | Chapter 13 |
| ) | |
| Debtors. ) | |

**O P I N I O N**

Before the Court is an Application for Final Compensation and Reimbursement filed by Attorney Aaron Wickenhauser on behalf of his firm, Ostling & Associates, Ltd., seeking an award of fees for representing the Debtors in this Chapter 13 case. For the reasons set forth herein, the Application for Final Compensation and Reimbursement will be allowed in part and denied in part.

**I. Factual and Procedural Background**

Shad L. Eskew and Jamie L. Eskew ("Debtors") filed their voluntary petition under Chapter

13 on November 21, 2011. Debtors were represented in the filing by Attorney Aaron Wickenhauser of Ostling & Associates, Ltd. ("Ostling"). During the pendency of the case, pleadings and other documents also have been filed on behalf of the Debtors by Attorney Jeffrey Abbott, Attorney Larry Spears, and Attorney Robert Follmer, all of whom are associated with Ostling.

Debtors' initial filing included only a skeleton petition, credit counseling certificate, statement of social security number, and mailing matrix. On December 2, 2011, Mr. Wickenhauser filed the Debtors' Statement of Financial Affairs and schedules. On that same date, Attorney Jeffrey Abbott filed the Debtors' Chapter 13 Plan ("Plan"). The Plan provided for the payment of trustee compensation, attorney fees, and a mortgage arrearage due to Bank of America. The Plan also provided for ongoing direct payments by the Debtors of regular mortgage payments to Bank of America and a loan due to West Central Bank secured by two vehicles. The Plan provided no dividend for unsecured creditors.

The Debtors' meeting of creditors was held on December 28, 2011. When the Chapter 13 Trustee filed his confirmation report several days later, he noted that an amended plan would be required to deal "with a new vehicle." The Plan drew an objection by the Illinois Housing Development Authority ("IHDA"), which claimed it was the current holder of the mortgage the Debtors had identified as being held by Bank of America and complained that the amount of the arrearage due on the mortgage was misstated in the Plan. When the Debtors failed to file an amended plan in the time allotted by the Trustee, the Plan was set for confirmation hearing.

The confirmation hearing was held on February 7, 2012. Mr. Wickenhauser appeared for the Debtors. At the hearing, the Court noted that an Amended Plan had been filed just the day before by Attorney Larry Spears and discussed with Mr. Wickenhauser the defects in the Amended Plan. The Amended Plan provided that one of the vehicles securing the debt to West Central Bank — a 1998 Ford Windstar — would be surrendered. The portion of West Central Bank's claim secured by the

second vehicle — a 2000 Ford F150 — was proposed to be paid through the Trustee in the amount of $975 with interest at 5.25% and with the remaining $10,070 of the claim being treated as unsecured and paid nothing. Elsewhere in the Amended Plan, however, West Central Bank's claim secured by the F150 was proposed to be paid in full directly by the Debtors "at contract rate." The Amended Plan also provided for payment of a debt to Advantage Auto Sales secured by a 2003 Ford Taurus despite the fact that Advantage Auto Sales had never been scheduled and, accordingly, had received no notice of the case filing. The Amended Plan continued to refer to Bank of America as the holder of the mortgage on the Debtors' residence.

At the conclusion of the hearing, confirmation of both the Plan and the Amended Plan was denied, and the Debtors were ordered to file a further amended plan within 14 days. Additionally, this Court, on its own motion, vacated an Order previously entered awarding Mr. Wickenhauser a "no-look" Chapter 13 fee of $3300. Mr. Wickenhauser and Ostling were advised that fees would only be awarded upon the filing of an itemized fee application after confirmation of a plan in the case.

On February 21, 2012, Attorney Larry Spears filed a Second Amended Chapter 13 Plan for the Debtors. The Second Amended Plan was similar in many respects to the Amended Plan. A minor change of a couple of hundred dollars was made in the amount of the proposed unsecured claim of West Central Bank, and the amount to be paid for attorney fees was modified to reflect that a fee application would be required. The Second Amended Plan continued to contain the contradictory language about West Central Bank's claim secured by the F150 and continued to refer to Bank of America as the mortgage holder. The Second Amended Plan drew objections from the Trustee and West Central Bank.

On the same date that the Second Amended Plan was filed, Attorney Jeffrey Abbott filed an Amended Schedule D for the Debtors to add Advantage Auto Sales to the case. The Amended

Schedule D was defective and could not be processed as filed. Accordingly, Advantage Auto Sales did not receive notice of the filing of the Second Amended Plan. Attorney Abbott properly refiled the Amended Schedule D on March 5, 2012.

Before hearing could be held on the Second Amended Plan, a Third Amended Plan was filed for the Debtors by Attorney Abbott. The Third Amended Plan properly identified the mortgage holder as IHDA and removed the confusing provision that provided for West Central Bank to be paid at contract rate. The Third Amended Plan drew an objection from the Trustee, however, because it provided for payments over a term in excess of 60 months. West Central Bank also objected to the value placed on the F150 in the Third Amended Plan.

On May 23, 2012, a Fourth Amended Plan was filed for the Debtors by Attorney Robert Follmer. The Fourth Amended Plan included payment of West Central Bank's secured claim on the terms agreed to by the Bank and reduced the plan term to 60 months. In the absence of any objection, the Fourth Amended Plan was confirmed on June 27, 2012.

The Application for Final Compensation and Reimbursement ("Fee Application") was filed by Mr. Wickenhauser on behalf of Ostling on July 26, 2012. In the Fee Application, Mr. Wickenhauser acknowledges that the Debtors entered into a written agreement with Ostling for a fixed fee of $3300 and that the terms of that agreement cap the compensation that can now be sought by Ostling. Mr. Wickenhauser suggests, however, that if the firm's work to date was billed at the firm's regular hourly rates, Ostling's fees and costs would total $5412.94. In support of that assertion, the Fee Application has itemized time records attached to it for the attorneys and staff at Ostling. Mr. Wickenhauser claims in the Fee Application that Attorney Lars Ostling, Attorney Robert Follmer, and Attorney Jeffrey Abbott all bill at the rate of $350 per hour, with Mr. Follmer having an enhanced rate of $450 per hour for in-court time. Mr. Wickenhauser also claims that both he and Attorney Larry Spears bill at the rate of $200 per hour and that he has an enhanced in-court

rate of $300 per hour. Differing hourly rates are also claimed for a host of non-lawyer employees of Ostling variously labeled as "legal assistants," "support staff," or "miscellaneous."

After reviewing the Fee Application, this Court entered an Order on July 30, 2012, requiring Mr. Wickenhauser to supplement the request by providing a copy of the written contract between Ostling and the Debtors and by providing more detail. Specifically, this Court requested supporting details for the claimed attorney hourly rates,[1] for the claimed out-of-pocket expenses, and for the charges made for the work of non-lawyer Ostling employees. A Supplement was filed by Mr. Wickenhauser on August 27, 2012, and, as requested, it included a copy of the contract between the Debtors and Ostling. The Supplement provided no detail or support for any of the hourly rates claimed by Mr. Wickenhauser for the Ostling attorneys in the Fee Application. To the contrary, in the Supplement, Mr. Wickenhauser suggests that $175 per hour is a reasonable billing rate for all Ostling attorneys. The Supplement also contains brief argument for the allowance of out-of-pocket expenses and the time expended by Ostling's office manager, Susan Pennypacker. Despite his acknowledgment in the Fee Application that the written agreement with the Debtors binds Ostling to charge no more than $3300, Mr. Wickenhauser prays in the Supplement for a total award of fees and costs in favor of Ostling in the amount of $3709.50.

On September 10, 2012, the Court issued an Order to Show Cause relating to the Fee Application and Supplement which directed Mr. Wickenhauser to show cause why he should not be sanctioned for violating Bankruptcy Rule 9011(b)(3) by filing the Fee Application claiming false hourly rates for himself and other Ostling attorneys. *See* Fed. R. Bankr. P. 9011(b)(3). The Order

---

[1] The Order sought "[a]uthority for this Court to find that the hourly rates claimed by the various attorneys of Ostling & Associates, Ltd. are reasonable and customary in the community for comparable services. Authority should include copies of any orders entered by any court awarding attorneys involved in this case fees at the hourly rates claimed. Alternatively, authority may include copies of court orders awarding similar hourly fees to attorneys from other firms along with an explanation why the services in the cited cases are comparable to the services rendered in this case."

invited Mr. Wickenhauser to request an evidentiary hearing, which the Order stated would be scheduled if requested in a timely-filed response.

Mr. Wickenhauser filed a timely response to the Order to Show Cause on September 24, 2012, wherein he stated that the hourly rates set forth in the Fee Application were provided to him by the firm's Managing Attorney, Lars Ostling, and "represented the billing rates as determined and approved by the firm through him for the attorneys and staff listed as his employees and employed by the firm during the relevant periods, and formed the evidentiary and factual support in [Mr. Wickenhauser] so listing said rates." Further, Mr. Wickenhauser asserted that he was not seeking specific approval of compensation at the rates set forth in the Fee Application. Rather, because the substantive relief sought was only an award of the "no-look" fee, he claims that his representations with respect to the various hourly rates was not material to the Court's analysis. He did admit that the Fee Application and Supplement were "inartful" and "deficient" and "lacked the necessary clarity" required. Finally, the response stated that no evidentiary hearing was requested.

Neither the Debtors nor the Trustee have raised any objections to the Fee Application or to the Supplement. The matter is ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. The particular issues raised here are core proceedings. *See* 28 U.S.C. §§157(b)(2)(A), (B), (O).

## III. Legal Analysis

### A. Debtors' Fee Contract with Ostling and this Court's Standing Order on Chapter 13 Fees Control the Court's Decision on the Fee Application

Attorneys representing individual debtors in consumer bankruptcy cases are "debt relief agencies" and, accordingly, before filing a case, they must clearly disclose all anticipated charges

for their services to their clients and enter into written contracts with such clients to confirm the terms of their engagement. *See* 11 U.S.C. §§101(12A), 528(a); *Milavetz, Gallop & Milavetz, P.A. v. United States*, 130 S. Ct. 1324, 1333 (2010). Debtors' attorneys are also required to file complete and accurate disclosures of their fee agreements in every case. *See* 11 U.S.C. §329(a); Fed. R. Bankr. P. 2016(b); *In re Kowalski*, 402 B.R. 843, 848 (Bankr. N.D. Ill. 2009); *In re Jackson*, 401 B.R. 333, 339 (Bankr. N.D. Ill. 2009).

Even when attorneys have fully complied with all statutory requirements, their fees remain subject to court review for reasonableness. *See* 11 U.S.C. §329(b); *In re Geraci*, 138 F.3d 314, 318 (7th Cir.1998). In order for a court to make a determination of the reasonableness of any particular fee, debtors' attorneys are generally required to file itemized fee applications. *See* 11 U.S.C. §330(a); Fed. R. Bankr. P. 2016; *Geraci*, 138 F.3d at 317.

Because many debtors' attorneys offer their services at fixed or flat rates for the entire bundle of services generally needed to complete consumer cases, many courts have adopted a practice of allowing a presumptively reasonable amount — often called a "no-look" fee — to be charged by attorneys without requiring the filing of an itemized fee application in every case. *See In re Murray*, 330 B.R. 732, 733 (Bankr. E.D. Wis. 2005). The setting of a "no-look" fee relieves attorneys and courts from the time and expense of filing and reviewing fee applications for routine matters. *Id*. And, because attorneys may still seek fees in amounts higher than the "no-look" fee simply by filing an itemized request, the practice of setting a fair "no-look" fee has generally been viewed as proper by courts and practitioners alike. *See Geraci*, 138 F.3d at 321; *In re Kindhart*, 160 F.3d 1176, 1178-79 (7th Cir. 1998).

A Standing Order Regarding Attorney Fees for Debtor's Counsel in Chapter 7 and 13 Cases (Revised 1/1/12) for the Central District of Illinois, Springfield Division is currently posted on the Court's website. A Standing Order Regarding Attorney Fees for Debtor's Counsel in Chapter 7 and

13 Cases (Revised 1/1/10) for the Central District of Illinois, Springfield Division ("Standing Order") was posted on the Court's website when this case was filed and remains available for review on the website. The current and the superceded Standing Orders do not differ in any respect material to this case.

The Standing Order provides that the maximum amount a debtor's attorney may charge for fees in a Chapter 13 case without having to submit itemized time records is $3300. In exchange for accepting a fixed or flat fee at or below the "no-look" amount, attorneys must agree to perform all of the services listed in the Standing Order. Attorneys may elect a different fee arrangement with their clients, but are then required to strictly comply with all statutory requirements for fee approval. In this Court's experience, the vast majority of attorneys who represent debtors in Chapter 13 cases opt for a flat fee and save themselves the time and expense of filing fee applications. Notwithstanding this general practice, the Standing Order clearly provides that, upon the request of an interested party or *sua sponte*, the Court may consider whether an attorney's agreed to fixed fee should be reduced based on the circumstances of a particular case. And, the Standing Order reminds attorneys that fees in any amount — including a "no-look" amount — can only be awarded if the attorney's agreement with their own debtor-client provides for the payment of the fees requested.

In response to the Court's request for a copy of the fee agreement with the Debtors here, Ostling has submitted a document labeled "Rights and Responsibilities Of Chapter 13 Debtors & Their Attorneys" ("Fee Agreement"). The Fee Agreement appears to have been signed by Mr. Wickenhauser on August 26, 2011, and by the Debtors on November 4, 2011.[2] The Fee Agreement

---

[2] It is questionable whether the Fee Agreement complies with the statutory requirement that attorneys execute a written agreement with debtor-clients "within 5 business days after the first date" on which they provide any bankruptcy assistance. 11 U.S.C. §528(a)(1). Mr. Wickenhauser met with the Debtors on August 26, 2011, and, according to his time entries, consulted with them on that date about determining "the proper bankruptcy chapter." The Debtors did not sign the Fee Agreement until November 4, 2011, long after the "5 business days" period would have run. Thus, it does not appear that the Fee Agreement was executed in accordance with statute. Developing case law on the

-8-

lists duties that a debtor agrees to perform and contains a listing of the services Ostling intends to provide. The Fee Agreement represents that the "rights and responsibilities" set forth for both parties come from "guidelines provided by the Court." The Fee Agreement provides that it is for flat fee legal representation in a Chapter 13 case and again represents that it is guidelines from the Court which establish the $3300 fee.[3] Prior to a case filing, debtors are required by the Fee Agreement to pay the filing fee plus $1000 of the total fee to Ostling. Ostling agrees to accept payment of the balance of the fees in installments through plan payments. The Fee Agreement does not provide for the payment of any costs by debtors other than filing fees.

Taken together, the Standing Order and the Fee Agreement limit the fees which Ostling may seek and this Court may award in this case to $3300. Ostling's current request for fees and costs in the amount of $3709.50 exceeds the contractually agreed upon amount. The Court must limit its inquiry to whether Ostling has justified an award of fees in the amount of $3300.

### B.   Ostling's Fee Application Does Not Support an Award of Fees in the Amount Claimed and Must Be Denied in Part

Fee Applications are reviewed under the standards set forth in §330(a)(3) which provides:

(3) In determining the amount of reasonable compensation to be awarded to an

---

issue suggests that the remedy for such violations is not necessarily an automatic denial of all fees but rather a review for reasonableness as the Court has undertaken here. *See In re Humphries*, 453 B.R. 261, 269 (E.D. Mich. 2011).

[3] Both suggestions in the Fee Agreement that the terms come from Court "guidelines" are misleading. The Standing Order does contain a list of services which must be performed by attorneys, but the list of services in the Fee Agreement is not identical to the Standing Order list. More importantly, this Court has not issued a list of duties for debtors, and the suggestions that the duties set forth in the Fee Agreement come from the Court is simply not true. Further, the Fee Agreement implies that the Court has set a fixed fee of $3300 for Chapter 13 cases, which is also not true. The $3300 "no-look" fee is the maximum amount which may be charged without an itemization being required. But, it is not a fixed or recommended fee and attorneys may, and certainly should, charge less in cases where the full $3300 cannot be justified.

examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including —

 (A) the time spent on such services;

 (B) the rates charges for such services;

 (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

 (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

 (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

 (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3).

In the Fee Application and Supplement, Mr. Wickenhauser provides information about Ostling's hourly rates and sets forth an itemization of the time expended by Ostling attorneys and staff on this case. No commentary or argument was provided on the other statutory factors.

**1. Hourly Rates**

As set forth above, Mr. Wickenhauser claimed in the Fee Application that Lars Ostling, Robert Follmer, and Jeffrey Abbott all bill at the rate of $350 per hour with Mr. Follmer commanding an enhanced rate of $450 per hour for in-court time. Further, Mr. Wickenhauser claimed that both he and Larry Spears bill at $200 per hour, and that he bills $300 per hour for in-court time. When asked for some support or authority for the claimed hourly rates, absolutely none

was provided. In his Supplement, Mr. Wickenhauser simply concedes that $175 per hour for all Ostling attorneys is a proper rate and makes no attempt to justify the originally claimed rates. When pressed to provide justification for his factual representations respecting the various hourly rates, Mr. Wickenhauser states that, although it does not matter, the information came from Mr. Ostling, and the reason why it does not matter is because the "no-look" fee is all that is being sought.

      Although most attorneys who represent consumer debtors before this Court do so on a flat fee basis, this Court has had occasion from time to time to review fee requests and become acquainted with the prevailing market rate for similar services in the local legal community. Attorneys in Chapter 13 cases sometimes seek fees for representing debtors in matters, such as adversary proceedings, which are not included in the "no-look" fee. Attorneys in both Chapter 7 and Chapter 13 cases request fees from creditors who have violated the automatic stay or discharge injunction. Chapter 7 trustees frequently hire themselves or other local attorneys to represent them in a variety of matters involved in estate administration. From hearing these matters over the years, this Court can say with a high degree of confidence that the prevailing market rates for attorneys representing consumer debtors in the Central District of Illinois, Springfield Division range from $175 to $250 per hour.

      This Court also from time to time has become acquainted with the prevailing rates for comparable services in non-bankruptcy cases. For example, issues frequently arise in consumer cases related to fee claims made by attorneys who have represented a debtor or the debtor's former spouse in dissolution of marriage proceedings or other family law matters. The Court's observation is that the fees charged by attorneys in such matters are generally in the same $175 to $250 per hour range. Ostling has not presented anything which would suggest otherwise.

      In determining a proper hourly rate to award, this Court must consider whether the professionals seeking compensation have demonstrated "skill and experience in the bankruptcy

field[.]" 11 U.S.C. §330(a)(3)(E). Although several of the Ostling attorneys seeking compensation through the Fee Application have been practicing in the bankruptcy field for many years — most notably Mr. Ostling and Mr. Follmer at over 30 years each — none of the Ostling attorneys have established themselves as having the expertise required to command fees at the high end of the spectrum. The work in this case evidenced a significant amount of stumbling and fumbling around and the attorneys needed five attempts at drafting a plan in order to bring a fairly simple and straightforward Chapter 13 case to confirmation. The legal work here can only be characterized as poor. And, unfortunately, this case is not an isolated incident. The poor quality of the legal work by the Ostling attorneys has been the subject of comment by this Court on several prior occasions. *See, generally, In re Moffett*, 2012 WL 693362 (Bankr. C.D. Ill. Mar. 2, 2012); *In re Delaney*, 2011 WL 1749596 (Bankr. C.D. Ill. May 6, 2011); *In re Bardenshtein*, 2009 WL 722590 (Bankr. C.D. Ill. Mar. 17, 2009).

Taking into account all relevant factors, this Court concludes that $175 per hour is a proper rate for any award of fees to Ostling. That amount is at the lower end of the spectrum, but the work here merits nothing higher. Ostling concedes in the Supplement that $175 per hour is all that can be justified.

Although Mr. Wickenhauser urges the Court to disregard his initial claims regarding hourly rates, the false claims are simply too egregious to be ignored. In compliance with Rule 9011, this Court initiated its inquiry by first asking for the Supplement and then issuing the very specific Order to Show Cause described above. Fed. R. Bankr. P. 9011(c)(1)(B). In response, Mr. Wickenhauser blames his boss, Mr. Ostling, for the false information but provides no real justification for claiming hourly rates so far out of line with customary rates. Although Mr. Wickenhauser might have been mislead by Mr. Ostling about the rates of some of the Ostling attorneys, he could not have been mislead about his own hourly rates. He certainly knows that he cannot command rates for in-court

work which are at the high end of the spectrum for Central Illinois attorneys, and his representation that he does charge such rates was knowingly false. Further, his assertions now that the false rates can be ignored because he really just wants the "no-look" fee is indefensible. He was ordered to itemize because the Court questioned his entitlement to the "no-look" fee. A key part of itemization is providing a proper hourly rate for the time for which compensation is sought.

Mr. Wickenhauser and Mr. Ostling violated their obligations to this Court by participating in creating the false claim, and Mr. Wickenhauser violated Rule 9011 by signing and filing the Fee Application. *See* Fed. R. Bankr. P. 9011(b). The award of fees will be reduced by $500 as a sanction for the initial claim of false hourly rates for the Ostling attorneys. Those rates were made up and intended to mislead the Court. This Court should not have to ask twice to get truthful, accurate documents and pleadings from the attorneys who practice before it. Mr. Wickenhauser, who signed the Fee Application, and Mr. Ostling, who claims to have spent several hours reviewing it, are admonished that their conduct in creating and filing the false Fee Application was unprofessional and unethical. The $500 deduction taken here is intended to deter such conduct in the future. *See* Fed. R. Bankr. P. 9011(c)(2).

**2. Time Records**

The Fee Application provides itemized time entries for the Ostling attorneys and staff. Mr. Wickenhauser asserts that the Fee Application details 18.8 hours of itemized time for Ostling attorneys but the itemized time actually totals 18.7 hours. Some of those hours cannot be compensated even at a reduced rate.

Attorney Lars Ostling claims an hour of time spent on July 23, 2012, discussing with his staff the requirement that the Fee Application be filed in this case. Although it may well have been appropriate to spend time with his staff reviewing the circumstances that caused the problems in this

case, conducting such a meeting is not compensable legal work that can be charged to the Debtors here. The hour spent at the meeting will not be included in the fee award.

Mr. Ostling also charges two hours on July 25, 2012, for further staff discussions and for reviewing the Fee Application before it was filed. The Fee Application, apparently, was drafted by a clerical staff member. None of the time records indicate that Mr. Ostling had any direct involvement in the case or that he would have actual knowledge of the propriety of any of the time entries set forth in the Fee Application. Thus, Mr. Ostling's ability to perform a meaningful review of the Fee Application is doubtful. Further, Mr. Ostling's acknowledged review of the Fee Application makes him complicit in the false claim of the exaggerated hourly rates claimed in the Fee Application. This Court has already indicated an intent to reduce the fees awarded by $500 due to the initial false filing. It is also appropriate to deny any compensation for the two hours Mr. Ostling spent reviewing the false claim.

The problems in this case were caused in large measure by the inefficient practice utilized by Ostling of having multiple lawyers — most of whom never met the clients, reviewed the file, or consulted with each other — handle bits and pieces of the case. Mr. Wickenhauser met with the Debtors three times before this case was filed and prepared the petition, schedules, and Statement of Financial Affairs. But, on the date Mr. Wickenhauser was getting the last of those documents filed, Mr. Abbott clocked time for preparing and filing the Chapter 13 Plan even though he never met with the Debtors. Mr. Wickenhauser attended the creditors' meeting with the Debtors and charged time to review the Trustee's confirmation report and the IHDA's Objection to Confirmation. But, the Amended Plan was prepared by a clerical staff member under the supervision of Mr. Spears, who does not appear to have reviewed any of the pertinent documents or consulted with anyone who had. Mr. Wickenhauser attended the February 7, 2012, confirmation hearing, during which the problems with the Amended Plan were discussed in detail, but the Second Amended Plan was filed by Mr.

Spears, who apparently never talked to Mr. Wickenhauser about what changes were needed to submit a confirmable plan. Not surprisingly, the Second Amended Plan failed to correct the problems discussed in court. This tag-team practice continued throughout the case with attorneys preparing plans without consulting with the Debtors or each other. The practice culminated with Mr. Wickenhauser signing and filing a materially false Fee Application which the time records indicate he did not even spend a minute reviewing.

The time records show that approximately 3.4 hours were spent by various Ostling attorneys on plan drafting and review of plan objections and .8 hour was spent by Mr. Wickenhauser in preparing for and attending the February 7, 2012, confirmation hearing. Much of this time was wasted due to the lack of communication among attorneys at Ostling and the constant handing off of legal work from one attorney to another without any apparent concern about whether the attorney doing the work knew anything about the case or not. Wasted time cannot be compensated, and two hours of time will be subtracted from the amount claimed on the Fee Application for the waste here.

Mr. Wickenhauser charged his travel time from the local Ostling office to the creditors' meeting site and to the Courthouse for the February 7, 2012, hearing. Time for local travel is generally not compensable. Here, the distance is a scant 3.8 miles each way, and Mr. Wickenhauser has provided no support for awarding him fees for local travel time. Further, on February 7, 2012, and, most likely, at the creditors' meeting, Mr. Wickenhauser represented multiple clients with consecutive hearings. Thus, even if local travel time were compensable, such time would have to be allocated among all of the clients represented during the same trip. Mr. Wickenhauser has not made that allocation, and his total of 1.2 hours claimed for travel time is disallowed.

There are other problems with Ostling's time records. Many entries include time for the "filing" of documents, which is clerical work and is not compensable even if done by an attorney. A number of entries charge significant time for the "review" of routine notices and orders from the

Court. These entries appear to overstate the time involved, particularly where the "review" does not result in any action, or the action taken thereafter was taken by someone other than the reviewer. Amounts of time spent preparing for and "waiting" for conference call hearings appears to be seriously overstated based on the records of when the calls were scheduled and when they occurred. Nevertheless, because of the other deductions made from the amounts requested in the Fee Application, further deductions will not be taken for these deficiencies.

The Fee Application also seeks $110 for services provided by Susan Pennypacker, the Ostling office manager and bookkeeper. Ms. Pennypacker itemized a $100 "flat fee" to open a file for this case, place the Debtors' names on a master list, and create an accounting file. Ms. Pennypacker also charged another $20 — not the $10 claimed — for making three additional accounting entries on the Ostling books. The services Ms. Pennypacker provided are clearly clerical in nature and are not compensable as legal work. *See In re Gvazdinskas*, 2010 WL 1433308, at *3-4 (Bankr. C.D. Ill. Apr. 8, 2010); *In re CF & I Fabricators of Utah, Inc.*, 131 B.R. 474, 489 (Bankr. D. Utah 1991) (overhead — which is not subject to reimbursement — includes secretarial or clerical services). All charges for Ms. Pennypacker will be disallowed.

### 3. Costs

The Fee Application does not specifically request the approval of any costs for Ostling, but the Supplement prays for the approval of $309.50 in costs. The costs actually detailed total $42.94. Although not expressly stated, the remaining amount may be for the initial filing fee even though that fee was $281 and, mathematically, including it would result in total costs of $323.94.

The Fee Agreement that Ostling signed with the Debtors provided for the Debtors to pay $1000 toward their attorneys fee and to pay the full filing fee before the case would be filed. In the Fee Application, Ostling states that it "has received $1000.00 to date to be applied towards attorney

fees, as well as, $281 for the court filing fee." The sentence is grammatically cumbersome and could mean either that the $1000 was to be applied to both attorney fees and the filing fee or that Ostling received both the $1000 and the $281. The Disclosure filed with the case pursuant to Fed. R. Bankr. P. 2016(b) and signed by Mr. Wickenhauser says that the attorney fees are $3300 and that $1000 has been received toward that fee, leaving $2300 unpaid. This suggests that the $281 filing fee was paid separately by the Debtors and not out of the $1000. Further, Ostling has not alleged that the Debtors defaulted on the Fee Agreement by failing to pay the filing fee in addition to the $1000. All of the information before the Court compels a finding that the Debtors have already paid the filing fee to Ostling and, accordingly, Ostling cannot be awarded reimbursement for that fee.

The costs requested included $12.44 for mileage and parking, $26.50 for copies, and $4.00 for mailing. Just as Mr. Wickenhauser's time for local travel was disallowed, his costs for such travel must be disallowed for the same reasons. *See In re Vancil Contracting, Inc.*, 2008 WL 207533, at *6 (Bankr. C.D. Ill. Jan. 25, 2008); *see also In re Palladino*, 267 B.R. 825, 833-34 (Bankr. N.D. Ill. 2001); *In re Wildman*, 72 B.R. 700, 731 (Bankr. N.D. Ill. 1987). The postage and copy costs are not sufficiently itemized here to meet the standards for reimbursement and must be disallowed also. *Palladino*; 267 B.R. at 834; *see also In re Convent Guardian Corp.*, 103 B.R. 937, 940-43, 946-47 (Bankr. N.D. Ill. 1989).

**4. Calculation**

The Fee Application as modified by the Supplement requested fees for 18.8 hours of attorney time at $175 per hour or a total of $3290. Reducing the request by .1 hour to reflect that actual time shown results in fees of $3272.50. Further deductions discussed above totaling 6.2 hours reduce the fee to $2187.50. Finally, deducting the $500 sanction for the false hourly rates claimed in the Fee Application results in a final fee award of $1687.50. With $1000 having already been paid, $687.50

remains to be paid through the Debtors' confirmed plan in accordance with the Standing Order.

### IV. Conclusion

Attorneys are entitled to reasonable compensation for representing debtors before this Court. In an effort to establish an efficient system of awarding fair compensation while at the same time limiting the time and expenses involved in obtaining such awards, this Court has published its Standing Order setting a maximum "no-look" fee of $3300 for representation of debtors in Chapter 13 cases. In exchange for being relieved of the obligation to itemize time, attorneys simply agree to undertake the full bundle of legal services required to complete a basic Chapter 13 case and to provide those services in a timely and competent manner. Generally, the system works well for the attorneys, debtors, and the Court. But when, as here, attorneys waste time and repeatedly file documents which do not meet the minimum requirements for the competent practice of law, the Court must take a close look at the fees to be awarded.

Ostling failed to provide the legal services required here in a timely and competent manner. Further, when asked to justify their fee request in detail, Mr. Wickenhauser and Mr. Ostling participated in the filing of a false Fee Application that claimed hourly rates for Ostling attorneys for which there was no factual or legal support.

Based on the analysis set forth above, Ostling's fee award will be limited to $1687.50. The unpaid balance of $687.50 will be paid through the confirmed Fourth Amended Chapter 13 Plan in accordance with the Standing Order.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###